UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GREGORY LILLY                                    CIVIL ACTION NO. 07-1099

versus                                           JUDGE STAGG

BIG E DRILLING CO.                               MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

Gregory Lilly ("Plaintiff") filed suit in state court against Big E Drilling Company ("Defendant") for damages related to a workplace accident in which Plaintiff lost the tip of his left thumb. Defendant removed the case based on an assertion of diversity jurisdiction. Plaintiff filed a document titled Opposition to Notice of Removal in which he urged that the amount in controversy does not exceed $75,000. The court treated the submission as a motion to remand and noticed it for briefing. Defendant has filed a memorandum in opposition. For the reasons that follow, the Motion to Remand will be granted.

**Amount in Controversy**

Tort plaintiffs who file suit in Louisiana state courts may not specify the numerical value of their damage claim. La. Code Civ. P. art. 893. If a defendant removes such a case based on an assertion of diversity jurisdiction, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. The defendant may make this showing by: (1) demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (2) setting forth the facts in controversy – in the notice of removal or an

affidavit – that support a finding of the requisite amount. Luckett v. Delta Airlines, 171 F.3d 295, 298 (5th Cir. 1999); Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999).

**Relevant Facts**

Plaintiff alleges in his petition that he was injured on November 10, 2006, while working on an oil rig. A mud bucket fell and struck Plaintiff, causing him to lose the tip of his left thumb. Petition, ¶ 2. Plaintiff received medical treatment at Minden Medical Center and was later referred to Dr. Michelle Ritter at the Center for Hand Surgery, Inc., where Plaintiff received further orthopedic medical treatment. ¶ 4.

Plaintiff alleges that the "immediate traumatic partial amputation of his thumb on his left hand" caused him "severe pain and suffering" and the inability to return to "full work duties" until April 18, 2007 (about five months after the accident). Plaintiff alleges that this caused him to miss bonus salary payments of approximately $6,000. ¶ 7. Plaintiff also requests recovery of unspecified amounts of medical expenses and general damages. ¶ 8-9.

Defendant's Notice of Removal adds no facts regarding the extent of damage or losses claimed by Plaintiff. Defendant did submit some medical records along with its memorandum in opposition to the motion to remand. The records show that Plaintiff first saw Dr. Ritter on November 13, 2006, three days after his accident. Plaintiff complained of pain localized in the thumb. Dr. Ritter referred Plaintiff to hand therapy and directed that he return in one week. Dr. Ritter released Plaintiff to return to work, effective that same day, with a few limitations such as dry work only with the injured hand. Plaintiff reported

throbbing and tenderness at the next visit. He was instructed to return in two weeks. At the third visit, in December 2006, Plaintiff reported continued stiffness in his thumb and a little drainage from the wound, but it was healing well. Plaintiff returned on December 21, 2006 and had no complaints other than slight tenderness at the tip of the finger.

By the next visit on February 1, 2007, Plaintiff had no general complaints and reported that he experienced pain in his thumb only if he hit it. Dr. Ritter released Plaintiff to return to work with no limitations. Plaintiff was told to call Dr. Ritter's office and schedule a visit if he had any problems. Plaintiff returned only once, on March 5, 2007, because his nail was ingrowing. Otherwise, the thumb was reported to be "doing great." There are no other reported visits to Dr. Ritter. The total charge for visits to Dr. Ritter was only $545.

A discharge summary from physical therapy shows that Plaintiff had 22 treatments between November 13, 2006 and January 4, 2007, when he was discharged from the program. It appears the therapy consisted of protective splinting, wound care, dressing changes and range of motion exercises. The therapist reported that Plaintiff was "doing very well, working without difficulty...." The physical therapy notes also indicate that Plaintiff missed no days of work due to the injury.

Dr. Raymond Dennie evaluated Plaintiff in April 2007 for an impairment and disability determination. Dr. Dennie found that Plaintiff had reached maximum medical improvement earlier on February 1. Dr. Dennie wrote that Plaintiff "may have lost one day from work, otherwise, he has no lost time." Plaintiff's only articulated complaint stemming

from his thumb injury was difficulty buttoning shirts. There were no chores around the house or yard that Plaintiff was unable to do. The physical examination "showed a small portion of the tip of the thumb to be amputated." Dr. Dennie found a 20% impairment of the left thumb, which translated to a 4% whole-person impairment.

**Analysis and Conclusion**

Louisiana law provides that a prayer for relief shall be for such damages as are reasonable "except that if a specific amount of damages is necessary to establish ... the lack of jurisdiction of federal courts due to insufficiency of damages ... a general allegation that the claim ... is less than the requisite amount is required." La.C.C.P. art. 893(A)(1). Plaintiff did not allege in his petition that his damages were less than $75,000, and Defendant urges that the lack of such an allegation by Plaintiff creates a "strong presumption" in favor of the exercise of diversity jurisdiction. Defendant cites decisions from another division of this court to support that argument, but the undersigned agrees with the reasoning in Berthelot v. Scottsdale Insurance Company, 2007 WL 716126 (E.D. La. 2007) that mere silence in a petition can not create federal jurisdiction. If parties may not create subject matter jurisdiction by express agreement or stipulation, which is well settled, then the mere inaction of the plaintiff (though perhaps in contradiction of a state procedural law) can not give rise to presumptive federal jurisdiction or satisfy the removing defendant's burden. There must be allegations of fact or other evidence in the record to support a determination of whether the amount in controversy requirement is met. Assume, for example, that a plaintiff alleged

in a state court suit that he stubbed his toe on a defective sidewalk, experienced 10 minutes of pain, and required no medical care. Absent more, no one would seriously argue that the lack of an Article 893 allegation could create a strong presumption that the amount in controversy was in excess of $75,000. It is the defendant's burden to show by a preponderance of the evidence that the amount in controversy exceeds $75,000, and mere silence or inaction by the plaintiff cannot satisfy that burden.

Defendant also attempts to make much of the allegation in the petition that the injury caused "severe" pain and suffering. Almost every petition that comes before this court, whether for a serious back injury that requires multiple surgeries or a minor soft-tissue case, contains an allegation that the Plaintiff suffered "severe" or "serious" or even "disabling" pain and injuries. Those adjectives, without supporting facts, do little to satisfy the removing party's burden of producing a factual basis for the requisite amount in controversy. Sutton v. Makita USA, Inc., 2007 WL 2008525, *3 (W.D. La. 2007); Parker v. Millar Elevator Services Co., 2000 WL 64289 (E.D. La. 2000) (allegation in petition of "permanent disability" was "fairly vanilla" and not enough to make it facially apparent that claims were likely to exceed $75,000). No reasonable person would conclude that the hypothetical toe-stubber described above, if he alleged that his pain was "severe," would be susceptible to removal based on diversity jurisdiction. The allegation of severe pain is a factor to consider in assessing the case, but given the reality that such an allegation appears in virtually every petition filed in state court, it does not carry significant weight.

The petition alleges that Plaintiff was unable to return to full work duties until April 18, 2007 and, as a result, missed bonus payments of approximately $6,000. Information in the medical records, however, suggests that Plaintiff was released to work with no restrictions on February 1, 2007 and that Plaintiff lost no time at work except for perhaps one day. The medical expenses incurred for treatment by Dr. Ritter were only $545. Presumably, the physical therapy cost something, but there is neither record evidence nor allegation of the amount of that expense. At best, these allegations of medical expense and lost wages give rise to a special damages amount in controversy of perhaps $10,000.

As for general damages, neither party has cited any decisions that reflect an acceptable award of damages for a similar injury. The court has reviewed the collection of "finger injuries" decisions summarized in Eason's Louisiana Quantum Book and found that thumb and finger injuries, many of them more significant than suffered by Plaintiff, have often resulted in verdicts or awards of much less than $75,000. The few decisions noted in the book that involved awards exceeding $75,000 were cases in which there were other significant injuries, surgeries, and other factors that easily distinguish those cases from this one.

A noteworthy case is Hughes v. Bossier Parish School Board, 745 So.2d 816 (La. App. 2d Cir. 1999), which arose when a college student had a heavy item fall on her left hand, rip off her thumbnail and nearly detach the tip of her thumb. An orthopedic surgeon operated on the day of the accident to reattach the tip of the thumb and the nail. He operated

again about a year later to remove bone fragments and scar tissue. He treated the plaintiff for roughly two years and ultimately assigned a 28% disability of the thumb. The plaintiff took pain medicine daily for a year; it diminished but did not completely relieve her pain. She missed three weeks of school, lost a part-time job, and continued to complain of occasional pain even four years after the accident. The plaintiff had a diminished ability to perform several everyday tasks, and her 15-year history of playing the violin was impacted. The jury awarded $50,000 in general damages. The appellate court found that the award was "at the upper end when contrasted with those for somewhat similar injuries" but the impairment of an artistic pursuit and other factors prevented the award from being considered "abusively" high. Two members of the five-judge panel dissented on the grounds that $35,000 was the maximum reasonable award.

Determining the amount in controversy in tort cases is not an exercise that is susceptible to balance sheet precision. A review of awards approved in similar cases is of some benefit, but the inherently individual nature of each claimant and set of injuries, the effects of inflation, and other factors caution against undue reliance on such decisions. Subject to these caveats, the 1999 Hughes decision supports a conclusion that the amount in controversy in this case does not exceed $75,000. The plaintiff in Hughes obviously suffered far greater pain and limitations than Plaintiff, yet her $50,000 general damages award was considered borderline by three judges and unacceptable by two judges. Even if this court accepted that Plaintiff's injuries give rise to a $50,000 amount in controversy for general

damages, there is not sufficient indication of additional special damages to overcome the $75,000 threshold.

After assessing the relevant facts and allegations under the governing law, the court concludes that Defendant has not satisfied its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. For these reasons, the **Motion to Remand (Doc. 9)** will, subject to the stay set forth in the accompanying order, be **granted**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of August, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE